UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

IN RE: )
)
TODD A. SWENNING, )   Case No. 15-11408-R
)   Chapter 11
Debtor. )

Filed/Docketed
Apr 14, 2017

ORDER GRANTING IN PART AND DENYING IN PART FIRST AND FINAL
APPLICATION OF CHAPTER 11 TRUSTEE
FOR COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF EXPENSES INCURRED

On February 1, 2017, Todd A. Frealy, Chapter 11 Trustee ("Trustee") filed his First and Final Application of Chapter 11 Trustee for Compensation for Services Rendered and Reimbursement of Expenses Incurred, and Notice of Opportunity for Hearing Thereon (Doc. 187) ("Application").  No responses or objections to the Application were filed, and the deadline for filing objections expired.  The Court's independent duty to insure that the fee sought was allowable under the applicable provisions of the Bankruptcy Code[1] prompted the Court to enter an order requiring Trustee to provide authority supporting his calculation of the maximum fee allowable under Section 326 of the Bankruptcy Code,[2] and requesting the Office of the United States Trustee ("UST") to state its position on whether the method used

---

[1] In re Albrecht, 245 B.R. 666, 672 (B.A.P. 10th Cir. 2000), citing In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 841 (3d Cir. 1994).

[2] 11 U.S.C. § 326(a).  Unless otherwise noted, all references to "Sections" herein are to sections of title 11 of the United States Code.

by Trustee in calculating the maximum fee under Section 326 was appropriate.[3] Trustee and the UST filed briefs on March 30, 2017.[4]

**Jurisdiction**

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334, 157(a) and (b)(2)(A) and (B), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

**Procedural History**

On July 28, 2015, Debtor Todd A. Swenning filed a petition seeking relief under Chapter 11 of the Bankruptcy Code. As debtor in possession, Debtor assumed the fiduciary responsibilities of the role, including, among other things, obligations to secure, protect and preserve estate assets (including Debtor's considerable post-petition earnings[5]), to make accurate reports and disclosures as required by the Bankruptcy Code and Rules, and to abide by court orders. As a result of Debtor's persistent failure to properly account for his post-petition expenditure of in excess of hundreds of thousands of dollars of estate funds, as well as his failure to account for the expenditure of over $250,000 in pre-petition income, despite court orders requiring the same, on April 19, 2016, the Court issued an Order to Show Cause

---

[3]Order Requiring Supplemental Briefs Regarding the First and Final Application of Chapter 11 Trustee for Compensation for Services Rendered and Reimbursement of Expenses Incurred (Doc. 197).

[4]Docs. 201 ("UST Response Brief") and 202 ("Trustee's Supplement").

[5]See 11 U.S.C. § 1115(a)(2).

2

Why a Chapter 11 Examiner Should Not be Appointed.[6] On April 22, 2016, the UST moved for dismissal of the case or, in the alternative, for the appointment of the Chapter 11 trustee.[7] An evidentiary hearing was held on the UST's motions and the order to show cause, whereupon the Court found overwhelming cause to dismiss the case. Creditors, however, expressed support for a Chapter 11 trustee rather than dismissal or the appointment of an examiner. Accordingly, the Court allowed the UST to withdraw its motion to dismiss and granted the motion to appoint a trustee.[8]

On June 1, 2016, the Court entered the order approving the UST's appointment of Trustee, and Trustee accepted the appointment on June 10, 2016.[9] From his appointment

---

[6]Doc. 70.

[7]Motion to Dismiss Chapter 11 Case, or in the Alternative, Appoint Chapter 11 Trustee (Doc. 77).

[8]See Transcript of Bench Ruling of May 23, 2016 (Doc. 122). Among the Court's findings: At the time of the hearing, Debtor had been debtor in possession of the estate for about ten months. During that period, over $650,000 flowed through the operating account of Debtor's professional corporation ("PC"). From the PC, Debtor paid himself a salary of $56,000 per month, but he spent it all on personal living expenses. Debtor did not open a debtor in possession account, and he transferred funds in and out of a designated tax account for purposes other than taxes. Debtor failed to maintain proper books and records for the PC, and failed to account for cash withdrawals and payments to insiders. In addition to dissipating his entire salary, Debtor also paid personal expenses from the PC's bank account, and furnished his non-debtor estranged spouse with a debit card for the PC's account which she used to pay her own personal expenses. Debtor failed to curb the extravagant lifestyle that landed him in bankruptcy in the first place, and exercised no financial restraint or transparency. The Court had no confidence in Debtor's financial management skills or his abilities to perform duties of a debtor in possession, such as examining pre- and post-petition transfers to insiders. Of the $650,000 Debtor earned in the ten month period, none of it had been reserved to fund a plan. Id. at 8-20.

[9]Amended Notice of Acceptance of Appointment by Chapter 11 Trustee (Doc. 117).

date until January 18, 2017, Trustee spent 122.4 hours on behalf of the estate, most of the time devoted to general case administration and to negotiating the terms of a consensual plan of reorganization. The Chapter 11 Trustee's Second Amended Plan of Reorganization Dated November 10, 2016,[10] as amended by stipulations entered into between and among Trustee and certain claimants and objecting parties, was confirmed. The negotiated stipulations were incorporated into the Order Confirming Chapter 11 Trustee's Second Amended Plan of Reorganization Dated November 10, 2016,[11] which was entered on January 3, 2017.

Under the terms of the confirmed plan ("Plan"), Trustee has and will continue to serve as a trustee for the purposes of making distributions required by the Plan, prosecuting avoidance actions and claim objections, and performing other duties required under 11 U.S.C. § 1106 and the Plan (hereinafter the "Plan Trustee"). The Plan Trustee is entitled to a fee calculated as 3% of distributions made under the Plan.[12]

**Contentions of the Parties**

In his Application, Trustee originally requested compensation for trustee services in the amount of $46,314.00 and reimbursement of expenses in the amount of $551.19. The fee of $46,314.00 was determined under Section 330(a), *i.e.,* by multiplying hours spent by

---

[10]Doc. 160.

[11]Doc. 180.

[12]The Plan contains inconsistent information regarding the commission applicable to plan distributions. See Plan (Doc. 160) at 5 (3%) and 23 (5%). The disclosure statement has similar discrepancies. Trustee's Supplement acknowledges, however, that he expects 3% of plan distributions as his fee for acting as disbursement agent under the Plan, and that was the Court's understanding as well.

4

the applicable hourly rate, the result of which Trustee voluntarily reduced by 33%. Recognizing that a Chapter 11 trustee's compensation cannot exceed the amount he would be entitled to as a commission on disbursements under Section 326 of the Bankruptcy Code, Trustee asserted that the maximum fee under Section 326 (the "Cap")[13] was $93,553.02. He arrived at this figure by multiplying $2,343,434.00 – the amount of projected distributions to be made under the Plan – by the Section 326 commission rates. Under that scenario, the compensation requested by Trustee did not exceed the Cap. The Court, however, questioned (1) the validity of basing the Section 326 Cap on disbursements not yet made with money not yet collected and (2) the propriety of collecting a percentage of the plan distributions twice.

In his supplemental brief, Trustee acknowledged that he was not entitled to calculate the Cap based upon the projected plan distributions, but submitted, instead, that the Cap should be based upon disbursements made by the Debtor's professional corporation (the "PC") from the date of Trustee's appointment to the date of confirmation of the Plan. Monthly operating reports for that period, prepared by Trustee, show that $480,607.40 flowed through the bank accounts of the PC and the estate.[14] Using that figure, Trustee now presents the Section 326 Cap as $24,680.37, which is the amount of compensation he now requests.[15]

---

[13] 11 U.S.C. § 326(a).

[14] Trustee's Supplement at 4.

[15] Id.

For its part, the UST responded to the Court's inquiry by quoting its manual for Chapter 11 trustees, which provides –

> Trustee compensation for pre-confirmation services is governed by § 330 and limited by the cap imposed by § 326. Those statutory sections do not apply to services rendered by the "plan trustee" post-confirmation. Instead, compensation is governed by the terms of the plan. The trustee, therefore, should insist that the plan delineate terms of post-confirmation compensation, including whether such compensation must be approved by the court. Even though statutory limitations do not apply, the trustee's compensation must be reasonable, in keeping with the trustee's status as a fiduciary and to avoid any perception of self-dealing.[16]

The UST also stated that it worked with Trustee to determine the correct pre-confirmation disbursement amounts.[17]

**Applicable Law**

Section 330(a)(7) of the Bankruptcy Code governs how the court "shall treat" the compensation of trustees. It provides:

> In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326.[18]

Section 326(a) provides a formula for calculating a trustee's commission as follows:

> In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of

---

[16]UST Response Brief at 3, quoting Chapter 11 Trustee Handbook dated May 2004, as published by the Office of the United States Trustee, at 74.

[17]UST Response Brief at 4.

[18]11 U.S.C. § 330(a)(7).

> $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case *by the trustee* to parties in interest, excluding the debtor, but including holders of secured claims.[19]

Section 330(a)(1) is the general provision governing the process of compensating estate professionals. It states:

> After notice to the parties in interest and the United States Trustee and a hearing, and *subject to sections 326*, 328, and 329, the court may award to a trustee, . . . or a professional person employed under section 327 or 1103–
>
> > (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
> >
> > (B) reimbursement for actual, necessary expenses.[20]

A Chapter 11 trustee must establish that compensation requested for trustee services is reasonable under the same standards applicable to attorneys and other professional persons employed by the estate. These standards, set forth in Section 330(a)(3) and (a)(4), generally require the trustee to keep track of time spent on trustee services, and justify their necessity and the likelihood the estate would benefit from the services.

Thus, a Chapter 11 trustee's compensation is limited to "reasonable compensation for actual, necessary services rendered by the trustee" as determined under Section 330(a), but regardless of how many hours were spent or how beneficial the services were to the estate, such compensation cannot exceed the Section 326 Cap –a commission based on "all moneys

---

[19] 11 U.S.C. § 326(a) (emphasis added).

[20] 11 U.S.C. § 330(a)(1) (emphasis added).

disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor" (the "Base").[21]

**Analysis**

Though the Court finds that Trustee has established that he performed valuable and necessary pre-confirmation services to the estate, the Court's authority to allow compensation for such services is constrained by the plain language of Section 326(a). The issue now before the Court is what qualifies as "moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor."[22] Trustee takes the position that the PC's gross revenue, which was disbursed to pay the PC's operating expenses, including Debtor's salary, constitutes moneys disbursed by Trustee under Section 326. In his Supplement, Trustee lists four reasons why the PC's disbursements should be counted in the Base.

First, he cites the language of Section 326 as support.[23] If Trustee had taken control of the PC's revenue and disbursed it to pay legitimate business expenses of the PC, he would have cause to claim credit for those disbursements, but that is not what happened. A payroll services company processed the PC's payroll and tax withholdings, disbursed salaries to Debtor and the PC's employees, and disbursed taxes to tax authorities. Debtor had control of the remaining revenue, and it was Debtor that directed payments to the PC's trade

---

[21] 11 U.S.C. § 326(a).

[22] Id.

[23] Trustee's Supplement at 3.

creditors, contract laborers, insurers, and others. Debtor made disbursements by debit card, check, and ETF services processed through the PC's bank account. Debtor also used the PC's funds for personal living expenses and those of his family. Section 326 clearly and explicitly limits the Base to disbursements made and funds turned over "by the trustee." Estate funds disbursed by third parties do not qualify.[24] Moreover, disbursements *to the debtor* are specifically excluded from the Section 326 base. As noted, the use of the funds appeared to be left to Debtor's discretion.

Second, Trustee argues that he was required to "monitor, report, and pay quarterly United States Trustee fees based on all disbursements to parties in interest from all accounts containing estate funds – *i.e.*, the P.C. accounts, the Trustee's account, and the Debtor's DIP account."[25] Trustee does not explain why monitoring, reporting and paying quarterly fees on disbursements made by the payroll agent and Debtor should be considered disbursements "by the trustee" for purposes of establishing the Base. But to the extent that Trustee contends that the bottom-line disbursement figures reflected in Debtor's monthly operating reports – the amounts used to calculate quarterly UST fees – are considered disbursements for Section 326 purposes, the Court disagrees. The meaning of the term "disbursements" contained in

---

[24] An exception may arise when a trustee obtains court authority to sell estate property, the sale is closed using an escrow agent, and rather than turning over the proceeds to the trustee to disburse to parties entitled to the proceeds, the escrow agent makes such disbursements at trustee's direction. See In re Macco Props., Inc., 540 B.R. 793, 848-49 and n.310 (Bankr. W.D. Okla. 2015), *citing* COLLIER COMPENSATION, EMPLOYMENT AND APPOINTMENT OF TRUSTEES AND PROFESSIONALS IN BANKRUPTCY CASES ¶ 6.02[2] (Matthew Bender & Co. 2014); In re Rybka, 339 B.R. 464, 470-71 (Bankr. N.D. Ill. 2006).

[25] Trustee's Supplement at 3.

the statute requiring payment of UST quarterly fees is distinguishable from the meaning of "disbursements" under Section 326.

The statute governing UST fees provides that in Chapter 11 cases, "a quarterly fee shall be paid to the United States trustee," the amount of which depends upon the dollar amount of "disbursements" from the estate.[26] Quarterly fees are paid to the U.S. Treasury, and are intended to offset expenditures required to fund the UST program.[27] Accordingly, courts have taken an expansive approach in defining disbursements,[28] acknowledging that the fee itself "bears no relation to particular services performed by the [U.S.] Trustee."[29] The quarterly fee base includes disbursements made by the estate, as well as payments made by third parties on behalf of the estate or for the benefit of the estate.[30] Section 326's measure

---

[26] 28 U.S.C. § 1930(a)(6).

[27] Walton v. Jamko, Inc. (In re Jamko, Inc.), 240 F.3d 1312, 1316 (11th Cir. 2001) ("Congress intended the UST fee . . . as a type of user tax on those who benefit the most from the [UST] program").

[28] See, e.g., Cash Cow Servs. of Fla., LLC v. U.S. Trustee (In re Cash Cow Servs. of Fla., LLC, 296 F.3d 1261 (11th Cir. 2002) (loans made by the debtor to its consumer loan customers counted as disbursements under § 1930(a)(6) of title 28); Jamko, 240 F.3d at 1316 (disbursements subject to § 1930(a)(6) are not limited to distributions to prepetition creditors or administrative claimants, but include ordinary business and operating expenses of the reorganized debtor); In re Danny's Markets, Inc., 266 F.3d 523, 526 (6th Cir. 2001).

[29] In re Aquatic Dev. Group, Inc., 352 F.3d 671, 674 n.2 (2d Cir. 2003); In re Sgaverdea, 377 B.R. 308, 313 (Bankr. D. N.M. 2007).

[30] In re Genesis Health Ventures, Inc., 402 F.3d 416, 422 (3d Cir. 2005) ("[p]ayments made on behalf of a debtor, whether made directly or indirectly through centralized disbursing accounts, constitute that particular debtor's disbursements for the purpose of quarterly fees").

of disbursements is specifically limited to those made "by the trustee."[31] A trustee's commission is designed to be at least somewhat related to the time and effort involved in obtaining a particular result – reducing the estate to money and paying claims – or in the case of Chapter 11 trustees, operating the debtor as a going concern while striving to reorganize.

Third, Trustee argues that the PC's income was an asset of the estate and will be a primary source of payments to creditors under the Plan. While that statement is certainly true, it does not advance Trustee's position that his fee for pre-confirmation services may be based upon disbursements made by Debtor and the payroll agent.

Fourth, Trustee states that "but for the P.C. being a medical services provider that the Trustee could not operate, the Trustee likely would have consolidated the P.C. into the estate."[32] Again, the Court does not disagree with the premise that Debtor and the PC had an identity of interests, since Debtor was the PC's sole shareholder and thus was entitled to the PC's net profits in addition to a salary. The fact is, however, that Trustee did not take control of the PC's earnings or Debtor's salary. Except for approximately $25,000 that Debtor turned over to Trustee, estate funds were controlled by, and used and disbursed at the discretion of, Debtor.

According to the monthly operating reports attached to Trustee's Supplement, Trustee's actual disbursements are limited to UST fees, bank charges, and the funds to be

---

[31] 11 U.S.C. § 326(a). Of course, disbursements under Section 326 *may* be equal to those listed on monthly operating reports for the purpose of calculating UST fees if all the disbursements were made by the trustee.

[32] Trustee's Supplement at 3.

11

turned over to the Plan Trustee. The Court finds that Trustee made the following disbursements:

| | |
|---|---|
| June 2016 | $1,250.00 |
| July 2016 | $1,640.00 |
| September 2016 | $15.00 |
| October 2016 | $15.00 |
| November 2016 | $24.30 |
| December 2016 | $4,900.46 |
| **Total:** | **$7,844.76** |

In addition, Trustee accumulated $16,331.92 in his trustee account, which has been (or will be) turned over to the Plan Trustee.[33] A commission under Section 326 based on $24,176.68 in moneys disbursed and turned over by Trustee equals $3,167.67.[34] In addition, Trustee is entitled to reimbursement of expenses in the amount of $551.19, for a total award of $3,718.86.

The Court is well aware that the statutory framework governing Chapter 11 trustee fees is wholly unsuited to the task of fairly compensating trustees for services rendered principally to reorganize a debtor.[35] As a leading bankruptcy treatise laments –

---

[33]See, e.g., In re Fin. Corp. of Am., 946 F.2d 689, 690 (9th Cir. 1991) (funds Chapter 11 trustee turned over to himself as successor Chapter 7 trustee are counted in calculating the Section 326 Cap for compensating the Chapter 11 trustee); In re North Am. Oil & Gas, Inc., 130 B.R. 473, 479-80 (Bankr. W.D. Tex. 1990) (liquidating agent under plan is a party in interest so Chapter 11 trustee's Base includes funds turned over to liquidating agent).

[34]Calculated as follows: 25% x $5,000.00 = $1,250.00; 10% x $19,176.68 = $1,917.67; $1,250.00 + $1,917.67 = $3,167.67.

[35]See, e.g., Macco, 540 B.R. at 859-60.

> The Code makes no special provisions for compensation for Chapter 11 trustees, even though the function of the trustee in Chapter 11 is undeniably, and intentionally, different from that of a Chapter 7 trustee. In Chapter 7, the principal function of the trustee is to promptly liquidate assets and disburse the resulting proceeds to creditors. The express provisions of Code § 1106 excuse the Chapter 11 trustee from having to liquidate estate assets. In fact, that same provision encourages a trustee to file a plan.
>
> If the trustee in a Chapter 11 case fulfills the intentions of the drafters of the Code, however, it would appear that the trustee might well find that the trustee has worked for free, as the only statute relevant to trustee compensation in the Code measures the trustee's commission against disbursement of monies to creditors or parties in interest. . . .
>
> Trustee compensation in Chapter 11, for better or worse, is computed on "moneys disbursed."  A Chapter 11 trustee who does not reduce estate assets to money but instead formulates a plan in which assets are transferred to creditors could end up without a base upon which to compute the trustee's fee.[36]

The Court certainly did not expect Trustee to work for free, but instead, anticipated that Trustee would develop a Section 326 Base by taking control of Debtor's post-petition earnings, paying the PC's reasonable operating expenses, depositing the estate's interest into a trustee account, paying Debtor's legitimate ordinary expenses (*i.e.*, rent, taxes, child support, utilities, UST fees, etc.), providing Debtor a reasonable allowance for personal living expenses, and retaining the rest to fund a plan.[37]  Trustee did invest substantial time

---

[36]5 Norton Bankr. L. & Prac. 3d § 99:28 (footnotes omitted).

[37]See Transcript of Bench Ruling of May 23, 2016 (Doc. 122).  The Court envisioned that the "trustee will be in a position to operate the financial arm of the PC, control and secure the cash, determine the PC's legitimate business expenses, and distribute the true net income from the PC to the estate's account.  A trustee can investigate the extent of Debtor's assets to determine whether the schedules are accurate and can investigate pre and post-petition transfers.  A trustee can work with the Debtor to develop a reasonable budget to control Debtor's personal living expenses and can work with creditors to develop a fair and confirmable plan." Id. at 20.

and effort successfully driving the case toward confirmation of a consensual plan of reorganization. Since Trustee's Supplement was filed, the Court has independently reviewed stacks of cases, treatises, and articles in an attempt to find some legal authority to grant Trustee's supplemented request for compensation, but found nothing that warranted departing from the plain and unambiguous language of Section 326. Hopefully, Trustee's pre-confirmation efforts will end up being fully compensated through Plan disbursement commissions.

**Conclusion**

The Motion is granted in part. Trustee is allowed a fee in the amount of $3,167.67 and expenses in the amount of $551.19, for a total of $3,718.86.

**SO ORDERED** this 14th day of April, 2017.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE