**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

In re
TODD A. SWENNING,

                           Debtor

Case No. 15-11408-R
Chapter 11

Evidentiary Hearing
Date:     June 5, 2019
Time:    1:30 p.m.
Place    Courtroom 1
          224 S. Boulder Ave. Suite 105
          Tulsa, OK 74103

**CHAPTER 11 TRUSTEE'S (I) REQUEST TO STRIKE DEBTOR'S LATE-FILED OPPOSITION TO CHAPTER 11 TRUSTEE'S MOTION TO (1) DISMISS CHAPTER 11 CASE (2) REQUIRE TURNOVER OF ESTATE FUNDS, AND (3) APPROVE THE METHOD FOR MAKING FINAL DISTRIBUTIONS OF REMAINING ESTATE FUNDS AND, IN THE EVENT THE LATE-FILED OPPOSITION IS NOT STRICKEN, (II) REPLY TO LATE-FILED OPPOSITION**

Todd A. Frealy, the Chapter 11 Trustee (the "Trustee") of the bankruptcy estate of Todd A. Swenning, the Chapter 11 debtor herein (the "Debtor"), hereby submits this (I) request to strike the Debtor's late-filed opposition (the "Opposition") [Dkt. 257] to the Trustee's *Motion To (1) Dismiss Chapter 11 Case (2) Require Turnover Of Estate Funds, And (3) Approve The Method For Making Final Distributions Of Remaining Estate Funds, And Notice Of Opportunity For Hearing* (the "Motion to Dismiss") [Dkt. 244] and, in the event the late-filed Opposition is not stricken, (II) reply to the late-filed Opposition (the "Request" or "Reply," as appropriate). Unless otherwise stated, all capitalized terms herein have the same meanings as in the Motion to Dismiss.

**I.**

## **INTRODUCTION**

For the second time in this case, after engaging in misconduct resulting in action by the Trustee, the Debtor has filed a late opposition without leave to do so.  In the first instance, the Trustee filed his Motion to Compel, wherein the Trustee set forth numerous instances of misconduct by the Debtor regarding his failure to comply with Plan terms and requesting that the Court enter the Motion to Compel Order compelling the Debtor to perform under the Plan.  The Debtor filed a late opposition to the Motion to Compel.  The Trustee sought to strike the opposition due to the fact that it was late and to have the Court enter the Motion to Compel Order, and the Court did so.

The result regarding the Debtor's late-filed Opposition to the Motion to Dismiss should be no different.  The Court should strike it and enter an order dismissing the Debtor's Chapter 11 case.  Indeed, as set forth in detail in the Motion to Dismiss and other papers filed with the Court and referenced in the Motion to Dismiss (*e.g.*, the UST's Trustee Motion seeking to dismiss this case or appoint a Chapter 11 trustee and the Motion to Compel), the Debtor is not an "honest but unfortunate debtor" deserving of bankruptcy protection and a discharge.  To the contrary, the Debtor has engaged in bad faith and misconduct since the inception of this Chapter 11 case and has never relented.

To the extent the Court does not strike the Debtor's late-filed Opposition, it should be overruled, because it is unsupported by evidence and lacks merit.  Notably, in his Opposition, the Debtor fails to address many of the myriad bases for finding cause for dismissal, any one of which would independently support dismissal, and ***the Debtor actually admits to the existence of cause for dismissal***.  For example, one of the bases for finding cause for dismissal is the failure by the Debtor to comply with an order of the Court.  In the Motion to Dismiss, the Trustee asserts that there is cause for dismissal due to the Debtor's failure to comply with an order of the Court.  Specifically, the Trustee asserts that the Debtor failed to comply with the Motion to Compel Order multiple times by (1) not timely delivering to the Trustee payments made to the PC and (2) never providing monthly PC Budgets to the Trustee.   The Debtor does not address or deny this assertion

2

by the Trustee and, therefore, it is deemed admitted.  The Debtor's failure to comply with the Motion to Compel Order alone is sufficient to establish cause for dismissal.

As another example, a further basis for finding cause for dismissal occurs where there is a material default by a debtor with respect to a confirmed plan.  Here, the Trustee asserted in his Motion to Dismiss that there were material defaults of the Debtor's performance under the Plan, because of the failure of the Debtor to (1) fund the plan, which resulted in a Plan Deficiency of over $175,000 that is only getting larger and (2) make the required $9,500 New Value Payment to the Trustee, which was due on January 18, 2019, despite the Debtor's continuing to make frivolous expenditures not contemplated by the Plan or its projections.  As discussed below, the Debtor admits such breaches.  Again, the foregoing is an independent, sufficient basis for finding cause for dismissal.  As also discussed below, there are still other bases for finding cause for dismissal.

Contrary to the Debtor's assertions, to the extent this case is dismissed (which it should be), the Court should impose a bar to refiling by the Debtor, because he has engaged in bad faith misconduct since the case was filed and has not shown any intent to reform.  Moreover, since the case should be dismissed due to, *inter alia*, the Debtor's willful failure to abide by the Confirmation Order and the Motion to Compel Order, a bar of at least 180 days to refiling is essentially mandated by Sections 109(g) and 349.  Further, Section 349 gives the Court authority for cause shown to bar the discharge of debts dischargeable in this case in any future case.  The Trustee believes that the Court should exercise such authority given the circumstances of this case.

Finally, it is notable that **the Debtor is the only party that opposed or even responded to the Motion to Dismiss.  Thus, no creditors or other parties in interest oppose dismissal with a bar to refiling.**

## II.

## STATEMENT OF FACTS

## A.    THE TRUSTEE'S MOTION TO COMPEL, THE LATE-FILED OPPOSITION THERETO, AND THE STRIKING THEREOF.

3

On February 2, 2018, the Trustee filed his Motion to Compel [Dkt. 226] seeking to compel the Debtor to comply with Plan terms and requesting that the Court enter the Motion to Compel Order requiring him to do so.  As set forth in the Motion to Compel, which is summarized in the Motion to Dismiss, the Motion to Compel was based on numerous instances of misconduct by the Debtor.  [*See* Motion to Dismiss, ¶¶ 14 a. – d.]

On February 19, 2018, the Debtor purported to file an opposition to the Motion to Compel (the "Motion to Compel Opposition").  [Dkt. 227]

On February 20, 2018, the Trustee filed his request to strike the Motion to Compel Opposition due to the fact that it was late-filed (the "Request to Strike").  [Dkt. 228]

On March 8, 2018, the Court entered its Motion to Compel Order, which, among other things, granted the Request to Strike and the Motion to Compel.  [Dkt. 230, which is Exhibit "16" to the Motion to Dismiss]

**B.**     **THE TRUSTEE'S MOTION TO DISMISS, NOTICE THEREOF, AND THE LATE-FILED OPPOSITION THERETO.**

On May 3, 2019, the Trustee filed his Motion to Dismiss.  [Dkt. 244]  As can be seen from the proof of service on the Motion to Dismiss, it was served on (1) ECF participants, including the Debtor's counsel, via the ECF system, (2) the Debtor via U.S. Mail at the address he provided in his bankruptcy petition under penalty of perjury, and (3) the Debtor via the email he has used to communicate on a regular basis with the Trustee and his counsel throughout the case.

On May 5, 2019, the Court entered a docket order setting an evidentiary hearing (the "Evidentiary Hearing") on the Motion to Dismiss for May 21, 2019.  [Dkt. 245]

On May 7, 2019, the Trustee filed his notice of the Evidentiary Hearing.  [Dkt. 247]  As can be seen from the proof of service on the notice of the Evidentiary Hearing, it was served on (1) ECF participants, including the Debtor's counsel, via the ECF system, (2) the Debtor via U.S. Mail at the address he provided in his bankruptcy petition under penalty of perjury, and (3) the Debtor via the email he has used to communicate on a regular basis with the Trustee and his counsel throughout the case.

4

On May 20, 2019, the Court entered a docket order continuing the Evidentiary Hearing on the Motion to Dismiss to June 5, 2019.  [Dkt. 253]

On May 20, 2019, the Trustee filed his notice of the continuance of the Evidentiary Hearing.  [Dkt. 254]  As can be seen from the proof of service on the notice of the continuance of the Evidentiary Hearing, it was served on (1) ECF participants, including the Debtor's counsel, via the ECF system, (2) the Debtor via U.S. Mail at the address he provided in his bankruptcy petition under penalty of perjury, and (3) the Debtor via the email he has used to communicate on a regular basis with the Trustee and his counsel throughout the case.

On May 29, 2019, the Debtor filed his late Opposition to the Motion to Dismiss.

The Debtor is the only party that opposed or even responded to the Motion to Dismiss. Thus, no creditors or other parties in interest oppose dismissal with a bar to refiling.

## III.

## <u>THE TRUSTEE'S REQUEST TO STRIKE THE DEBTOR'S LATE-FILED OPPOSITION</u>

Based on the May 3, 2019 filing of the Motion to Dismiss, pursuant to Rules 2002(a)(4) and 9006(f) of the Federal Rules of Bankruptcy Procedure ("<u>FRBP</u>") and Rule 9013-1(B) of the Local Bankruptcy Rules ("<u>LBR</u>"), May 27, 2018, was the nominal deadline for any party in interest to file an opposition to the Motion to Dismiss.  The Motion to Dismiss provided notice of the foregoing deadline as required by LBR 9013-1(B).  Due to the fact that May 27, 2019 was a "Legal Holiday," pursuant to FRBP 9006(a), the deadline for any party in interest to file an opposition to the Motion to Dismiss was automatically extended to May 28, 2019.

Notwithstanding the foregoing, the Debtor did not file his Opposition to the Motion to Dismiss until May 29 2019.  Therefore, the Opposition is untimely.  Filing an opposition one day late may not seem like a material issue when considered in a vacuum.  However, here, the late-filed Opposition must be considered in the context of, *inter alia*, (1) the Debtor continually engaging in misconduct since the outset of the case (*see e.g.*, the UST's Trustee Motion seeking

to dismiss this case or appoint a Chapter 11 trustee and the Motion to Compel, both of which were granted by the Court) and (2) the Debtor already having his late-filed Motion to Compel Opposition stricken by the Court the last time he was taken to task for his misconduct.

Based on the foregoing, while the Trustee understands that the Evidentiary Hearing on the Motion to Dismiss will proceed, the Trustee requests that the Court strike the Debtor's late-filed Opposition to the Motion to Dismiss.

### IV.

### THE TRUSTEE'S REPLY TO THE DEBTOR'S LATE-FILED OPPOSITION

### A.     THERE IS AMPLE CAUSE FOR DISMISSAL OF THE BANKRUPTCY CASE.

As set forth above, the Trustee requests that the Debtor's late-filed Opposition be stricken. To the extent not stricken from the record, the Opposition should be overruled for a number of reasons, as follows:

**First,** it must be stated at the outset that the Debtor's assertion that he and his PC have paid the Trustee $2.222 million to fund the Plan is grossly misleading.  [See Opposition, ¶¶ 1 and 7.C.] While the Debtor and his PC may have provided approximately $2.222 million in income, only a small portion of those funds were available to fund required Plan distributions.  Instead, the bulk of the funds transferred by the Debtor and the PC to the Trustee were redeposited into the PC to fund its operations, including the Debtor's alleged "business" expenses for extravagant travel, dining, etc.  This was not supposed to happen under the Plan.  Instead, funds were supposed to flow to the Trustee to make plan distributions with the Trustee not being required to constantly re-capitalize the PC.

As a result of the foregoing, the Trustee has only made approximately $708,685 in Plan distributions to creditors.  Of that amount, (1) $560,000 was paid to Mrs. Swenning, the Debtor's alleged former spouse and the only creditor who has been timely paid all distributions required by the Plan, on her spousal support claim, and (2) only $148,685 was paid to the other legitimate creditors of the estate.  [See Motion to Dismiss, at Exhibit "6."]   As discussed herein, as a result

6

of the Debtor's misconduct and failure to perform Plan terms, there is a Plan Deficiency in excess of $175,000 that is continuing to increase.

**Second**, the Opposition is not supported by any evidence whatsoever, and therefore, has no merit.

**Third,** notwithstanding any arguments by the Debtor to the contrary, the Trustee has established cause for dismissal under Section 1112.  As stated in *In re Whetten*, 473 B.R. 380 (Bankr. D. Colo. 2012), "[s]ection 1112(b) governs the conversion or dismissal of Chapter 11 cases.  That section contains sixteen examples of 'cause' to convert or dismiss a case.  The list is illustrative, not exhaustive.  Courts may find cause for other equitable reasons. The movant bears the burden of establishing cause by a preponderance of the evidence."  Id. at 382; *see also In re Vista Foods U.S.A. Inc.*, 226 B.R. 284 (B.A.P. 10th Cir. 1997) (stating preponderance of the evidence standard).  "To prove by a preponderance of the evidence means to prove that something is more likely so than not so."  *Lederman v. Frontier Fire Prot., Inc.*, 685 F.3d 1151, 1154 (10th Cir. 2012) (internal quotes omitted).

Here, the Trustee meets the foregoing relatively light burden of proof with regard to all bases for cause for dismissal asserted by the Trustee, any one of which is independently sufficient to support dismissal for cause.  Each of those bases and the Debtor's responses (or lack thereof) to each are as follows:

- **Section 1112(b)(4)(A) (substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation):** As discussed in the Dismissal Motion, there is cause for dismissal under Section 1112(b)(4)(A), because (1) the Debtor's failure to perform the terms of the Plan caused the Trustee to have to heavily police the case, including the filing of the Motion to Compel that was granted by the Court, all at considerable cost in the form of additional professional fees and costs, which has caused a substantial and continuing loss to and diminution of the estate and a guaranteed reduction in the pool of funds available to pay general unsecured claims, and

7

(2) due to the substantial and growing Plan Deficiency in already in excess of $175,000, which continues to grow, there is no likelihood of rehabilitation through the performance of the Plan.  [*See* Motion to Dismiss, ¶ III.2.a]

*The Debtor does not deny, and actually admits to, the foregoing Plan Deficiency*. Specifically, as stated in the Opposition, "[a]ccording to the Trustee's calculations, the total payments toward the Plan have fallen short of the Trustee's projections by approximately $177,000.00 (Motion, p. 16 ¶23). *One significant cause for the shortfall* was the failure of the credentialing and billing agent of Debtor's professional medical corporation (the "PC") to timely have the PC and Dr. Swenning credentialed with Medicare." [Opposition, ¶2 (emphasis added)]  The Debtor's explanation of why the Plan Deficiency occurred is irrelevant.  The important point is that the Plan Deficiency exists, is material, and is growing.

Further, there does not appear to be any reasonable likelihood that the Plan Deficiency will be eliminated.  The Debtor indicates that the Plan Deficiency resulted largely from Medicare billing issues, yet the Debtor goes on to state that there will be no retroactive recovery of the lost Medicare billings.  [*Id.*]  Likewise, the Debtor, without any evidence, pays great lip service to all of the efforts he allegedly has made and continues to make to fund the Plan. [Opposition, ¶1]  However, the simple fact is there is an admitted large and growing Plan Deficiency in excess of $175,000, and the Debtor's supposed efforts have not lessened the Plan Deficiency, which has only grown since Plan confirmation from $104,000, to $130,000, to $177,000, which amount will only continue to grow.  [*See* Motion to Dismiss, ¶ 22]  Finally, as discussed below, the Debtor is unwilling to help to fund the Plan Deficiency by paying over some or all of the New Tax Refund to the Trustee, making the New Value Payment to the Trustee, and/or cutting improper lavish spending not contemplated or permitted by the PC Projections and Debtor Projections.

- **Section 1112(b)(4)(E) (failure to comply with an order of the court):**  As discussed in the Dismissal Motion, there is cause for dismissal under Section

8

1112(b)(4)(E), because the Debtor failed to comply with the Motion to Compel Order multiple times by (1) not timely delivering to the Trustee payments made to the PC and (2) never providing monthly PC Budgets to the Trustee.  [*See* Motion to Dismiss, ¶ III.2.b]  ***The Debtor does not address or deny this assertion by the Trustee and, therefore, it is deemed admitted.  Further, the Debtor's failure to comply with the requirement under the Motion to Compel Order of turning over payments received by the PC within three (3) business days of receipt is ongoing to this day.***  [*See* May 23-31, 2019 email exchange between the Debtor and the Trustee, a true and correct copy of which is attached hereto as **Exhibit "A."**]

- **Section 1112(b)(4)(M) (inability to effectuate substantial consummation of a confirmed Plan):**  As discussed in the Dismissal Motion, there is cause for dismissal under Section 1112(b)(4)(M), because, *inter alia*, (1) the Debtor failed to make the New Value Payment in the amount of $9,500 that was due on January 18, 2019 to purchase non-exempt equity in vehicles, all while (i) making the numerous Improper Payments discussed in the Motion to Compel, (ii) continuing to make other improper payments even after the Court entered its Motion to Compel Order and without responding to the Trustee's inquiries regarding such payments, and (iii) retaining the New Tax Refund (more on that below) and (2) as a result of the foregoing, and the general failure of the Debtor to meet the requirements of the Plan projections, there is now a Plan Deficiency of $177,000 that continues to grow.  [*See* Motion to Dismiss, ¶¶ 20, 22 and ¶ III.2.b]

For the reasons discussed above regarding cause under Section 1112(b)(4)(A), there is no reasonable likelihood that the Plan Deficiency will be eliminated and that the Debtor will timely perform the payment terms of the Plan thereafter.

- **Section 1112(b)(4)(N) (material default by the Debtor with respect to a confirmed plan):**  See above regarding cause under Section 1112(b)(4)(A) and (B).  Most notably, (1) the Debtor admits to the existing $177,000 Plan Deficiency resulting from his defaults in performing the payment obligations of the Plan, (2) the Debtor does not deny

and, therefore, admits, that he failed to make the required $9,500 New Value Payment to the Trustee, which was due on January 18, 2019, and (3) the Debtor further admits that he "has not timely performed the Plan in a few particular respects." [Opposition, ¶ 7.c] As discussed above and in the Motion to Dismiss, those failures to perform are material defaults under the Plan and not mere technical or small defaults as the Debtor would like the Court to believe.

The Trustee also notes that, as a result of the foregoing failures by the Debtor to adequately fund the Plan, while carelessly dissipating funds that are required to be used and could be used to fund the Plan and eliminate or reduce the Plan Deficiency, the IRS and Desert Regional, have called Plan defaults and demanded that the Trustee perform under the Plan. [*See* Dismissal Motion, ¶ 22] In fact, as a result of the foregoing, as admitted by the Debtor, the IRS has started to levy on the Debtor's collections.[1] [*See* **Exhibit "A"** hereto]

- **Section 1112(b)(4) (general cause):** In consideration of all of the foregoing, including the Debtor's misconduct resulting in (1) the UST filing its Trustee Motion to appoint the Trustee, which was granted and (2) the Trustee's Motion to Compel, which was granted, the Trustee submits that there is also general cause for dismissal under Section 1112(b)(4). There is also general cause for dismissal based on the Debtor's conduct with regard to the New Tax Refund and his refusal to pay whatever amount thereof to which he is entitled over to the Trustee to reduce the Plan Deficiency and/or to satisfy the overdue $9,500 New Value Payment owed to the Trustee.

In the Dismissal Motion, the Trustee provided a detailed discussion of (1) his discovery that the Debtor received the New Tax Refund in the amount of approximately $41,400, (2) his requests for documents and information about the New Tax Refund (*i.e.*,

---

[1] The Trustee believes that the IRS' levy may constitute a breach of the automatic stay and/or the stay and injunction provided for under the Plan and reserves all rights with respect thereto.

the basis for the refund, the tax returns resulting in the refund, the basis for paying half to Mrs. Swenning, etc.) and (3) his efforts to have the Debtor pay the New Tax Refund over to the Trustee to reduce the Plan Deficiency and/or pay the $9,500 New Value Payment. [*See* Motion to Dismiss, ¶ 19 and related Exhibits].

In summary the Trustee emailed the Debtor on March 7, 2019, March 18, 2019, March 26, 2019, and April 11, 2019 requesting the foregoing documents and information concerning the New Tax Refund.  [*Id.*]  In the March 26 and April 11, 2019 emails, the Trustee indicated that a failure to respond was likely to result in the filing of a motion to dismiss the bankruptcy case. [*Id.*]  Only after all of the foregoing and the threat of a motion to dismiss did the Debtor respond.  [*Id.*]  However, in the Debtor's response on April 11, 2019, the Debtor merely passed responsibility to his accountants to respond to the requests for documents and information or provided incomplete responses to requests for information.  [*See* Dismissal Motion, ¶ 19.g and Exhibit "14."]  ***Notwithstanding the foregoing or the filing of the Motion to Dismiss, neither the Debtor nor his accountants ever provided the Trustee with the material portions of the documents and information he requested over two months ago.  [Id.]***

In connection with his Opposition, the Debtor could have provided the documents and information the Trustee requested regarding the New Tax Refund and cleared up issues as to the basis for the New Tax Refund (*i.e.*, was it for the overpayment of income taxes or for something else) and the alleged basis for Mrs. Swenning being entitled to 50% of the New Tax Refund.  Not surprisingly, the Debtor did not do so and provided only vague responses regarding the foregoing issues.  [Opposition, ¶¶ 3 and 5]

In his Motion to Dismiss, the Trustee asserts that (1) the New Tax Refund was generated from the overpayment of income taxes, (2) since the Debtor earns substantially more than Mrs. Swenning, the Debtor would be entitled to substantially more of the New

11

Tax Refund, and (3) under the Temporary Support Agreement[2] Mrs. Swenning is only entitled to $20,000 per month in support and no portion of the New Tax Refund. [Motion to Dismiss, p.2 at ¶ 2, p. 15 at ¶ 2, and Exhibit "4," which is a copy of the Temporary Support Agreement] The Debtor's response, without any evidence, is that (1) "[t]he New Tax Refund … was the joint property of the Debtor and the Debtor's spouse" and (2) [o]ne-half of the New Tax Refund was never the Debtor's property, nor property of the Estate, but was property of M. Swenning paid to her by the IRS. [Opposition, ¶¶ 5 and 6]

There is no support for the foregoing assertions. Again, the Temporary Support Agreement provides that Mrs. Swenning is only entitled to $20,000 per month in support. [Motion to Dismiss, at Exhibit "4," which is a copy of the Temporary Support Agreement, at ¶ 7.a] The Temporary Support Agreement does not provide that Mrs. Swenning is entitled to any tax refunds. [Motion to Dismiss, at Exhibit "4"] Additionally, the Child Support Computation in the Temporary Support Agreement provides that the Debtor makes 94% of gross income and Mrs. Swenning makes 6% of gross income. [*See* Motion to Dismiss, at Exhibit "4," which is a copy of the Temporary Support Agreement, at Child Support Computation Items 3 and 4 (aka Dkt 244 page 102 of 175.] This is generally consistent with the monthly operating reports showing total gross monthly income of approximately $36,000 to the Debtor and Mrs. Swenning, who is employed by the PC and paid by the Trustee, with $33,000 or 92% in gross income to the Debtor and $3,000 or 8% of gross income to Mrs. Swenning. Therefore, the evidence demonstrates that, at a minimum, the Debtor is entitled to between 92% and 94% of any refund resulting from the overpayment of income taxes. The Debtor does not dispute that the New Tax Refund was

---

[2] The *Temporary* Support Agreement is dated January 2016 and, according to the Debtor's counsel, there has never been a further separation or property division agreement. [See Motion to Dismiss, at Exhibit "4," which is a copy of the Temporary Support Agreement] Thus, the Temporary Support Agreement governs, and ***there are serious questions as to whether the purported separation and divorce of the Debtor and Mrs. Swenning was real or a sham intended to shield $20,000 a month in "support" payments from being utilized to pay legitimate creditor claims. Indeed, over three years after separation, the Debtor still refers to Mrs. Swenning as his "spouse."*** [Opposition, ¶ 5] The Trustee still has the right to assert claims to avoid the purported separation and resulting support payments are fraudulent transfers.

generated from the overpayment of income taxes, so there is no basis for Mrs. Swenning to have received 50% of the New Tax Refund, and the overpayment to her must be turned over to the Debtor and paid by him to the estate or turned over directly to the estate.[3]

*In addition to not providing the Trustee with documents and information regarding the New Tax Refund, the Debtor never paid any portion of the New Tax Refund to the Trustee, and the Debtor never responded to the Trustee's inquiry as to recent large expenditures of cash that could have been used to fund the Plan. [See Dismissal Motion, ¶ 20 and Exhibit "15."]*

Based on the foregoing, it is absurd for the Debtor to assert in his Opposition that he or his accountants have somehow been cooperative in responding to the Trustee's requests for documents and information regarding the New Tax Refund or that such documents and information had been provided, or that the Debtor has a genuine desire to cooperate with the Trustee and perform under the Plan. Instead, the Debtor's reluctance to cooperate with the Trustee's requests for documents and information pertaining to the New Tax Refund, his use of funds that could have been used to fund the Plan to make unauthorized Improper Payments for extravagancies,[4] and his failure to pay the New Tax Refund to the Trustee to satisfy Plan obligations, is merely a continuation of the Debtor's misconduct that has been present since the inception of the case and that lead the UST to file its Trustee Motion early in the case seeking the appointment of the Trustee, which was granted.[5]

---

[3] On the Debtors' theory, the Debtor could just continue to overpay income taxes and then pay 50% of the resulting return to Mrs. Swenning even though she is not entitled to it, to further prejudice the estate and creditors and cause the Plan Deficiency to continue to grow.

[4] As discussed in the Dismissal Motion, the Improper Payments that were not authorized or contemplated by the Plan projections included payments for, *inter alia*, over $11,500 in personal veterinary bills, fine dining, extravagant travel and entertainment, charity, retirement, and cash withdrawals for other personal expenses. [*See* Dismissal Motion, ¶ 14.d and Exhibit "9," which lists the Improper Payments]

[5] As discussed in the Dismissal Motion, the bases for the UST's Trustee Motion was premised on the Debtor's (a) failure to open required debtor in possession bank accounts despite repeated demands from the UST to do so, (b) failure to properly report personal expenditures on the Debtor's monthly operating reports, (c) use of the PC account to pay personal expenses with no response from the Debtor as to why it was

**B.      THE BANKRUPTCY CASE SHOULD BE DISMISSED WITH A (1) BAR TO ANY FUTURE DISCHARGE OF CLAIMS THAT COULD HAVE BEEN DISCHARGED IN THIS CASE AND (2) A BAR TO REFILING.**

Section 349(a) provides that:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a); *see also In re Frieouf*, 938 F.2d 1099, 1105 (10th Cir. 1991) (noting a 180-day limit to any bar to refiling under Section 109(g), but that Section 349(a) dismissal with prejudice allows for 3 year bar to discharge of debts that could have been discharged in the case being dismissed).  In *In re Norton*, 319 B.R. 671 (Bankr. D. Utah 2005), the Court noted that "Under § 349(a), a bankruptcy court has the discretion to dismiss a case with prejudice for cause.'" *Id.*, at 681.  The *Norton* Court went on to state that, in order to determine whether "cause" exists, courts should consider "whether (1) the debtor demonstrated bad faith or defiance, and (2) whether the debtor's conduct was abusive or prejudicial to creditors."  As also stated in *Norton*,  "[b]ad faith is determined by examining the totality of the circumstances."  *Id.*, at 682.

Here, the Debtor's misconduct discussed in and underlying (1) the UST's Motion to Appoint the Trustee, which was granted, (2) the Trustee's Motion to Compel, which was granted pursuant to the Motion to Compel Order and which the Debtor continues to breach, and (3) the instant Motion to Dismiss, which is discussed in the Motion to Dismiss and above and not repeated here, demonstrates bad faith and defiance that was prejudicial to creditors and abusive of the bankruptcy process.  Based on the foregoing, any order dismissing the Debtor's Chapter 11 case

---

happening, (d) repeated failure to respond to inquiries from the UST regarding tax issues, (e) failure to disclose all property, and (f) failure to accumulate funds to fund a plan of reorganization. [*See* Dismissal Motion, ¶ 2 and Exhibit "1."]

should provide that dismissal is with prejudice and a bar to the Debtor's future discharge of debts that could have been discharged in this case.[6]

In addition, any dismissal order should provide a 180-day bar to refiling pursuant to Section 109(g), which provides as follows:

> (g) Notwithstanding any other provision of this section, no individual … may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case

11 U.S.C. § 109(g).

Here, as discussed above, the case should be dismissed based on, inter alia, the Debtor's willful failure to abide by the Confirmation Order and the Motion to Compel Order, which is ongoing even today. Based on the foregoing, any order dismissing the Debtor's Chapter 11 case should provide for the maximum 180-day bar to refiling.

## V.

### CONCLUSION

**WHEREFORE**, based on the foregoing, the Trustee respectfully requests that the Court enter an order (1) granting the Request and striking the Debtor's late-filed Opposition or, alternatively, overruling the Opposition, (2) granting the Motion to Dismiss, (3) providing that dismissal is with prejudice and a bar to the discharge of any debts that could have been discharged

---

[6] The Trustee understands that this relief was not specifically requested in the Motion to Dismiss. However, the Trustee believes that it can be granted (1) because it is part and parcel with the requested relief of a bar to refiling under Section 109(g) discussed below and/or (2) under the Court's inherent authority under Section 105(a), particularly given the Debtor's egregious and ongoing conduct since the inception of the case. In the event that the Court does grant dismissal but is not willing to provide that dismissal is with prejudice under Section 349(a), the Trustee requests that the court conduct a supplemental hearing on that isolated issue.

in this case pursuant to Section 349(a), (4) providing that dismissal is with a bar to the Debtor refiling any bankruptcy case for 180 days after dismissal, and (5) granting such further and other relief as is warranted under the circumstances.

Dated: May 31, 2019

LEVENE, NEALE, BENDER, YOO
& BRILL L.L.P.

*/s/ Todd M. Arnold*
MARTIN J. BRILL
Cal. Bar No. 53220
(*Pro Hac Vice* Application Approved)
TODD M. ARNOLD
Cal. Bar No. 221868
(*Pro Hac Vice* Application Approved)
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: mjb@lnbyb.com, tma@lnbyb.com

Counsel for Chapter 11 Trustee, Todd A. Frealy

## DECLARATION OF TODD A. FREALY

I, Todd A. Frealy, hereby declare as follows:

1.      I am over 18 years of age.  Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, I could and would testify competently thereto.

2.      I am a partner in the law firm of Levene, Neale, Bender, Yoo & Brill L.L.P.

3.      I am duly licensed to practice law in the state of California and in the United States District Court and Bankruptcy Court for the Central District of California.

4.      I am the duly appointed Chapter 11 Trustee herein.

5.      I make this declaration in further support of the Request and Opposition to which this declaration is attached.  Unless otherwise stated, all capitalized terms herein have the same meanings as in the Request and Opposition.

6.      On February 2, 2018, I filed my Motion to Compel [Dkt. 226] seeking to compel the Debtor to comply with Plan terms and requesting that the Court enter the Motion to Compel Order requiring him to do so.

7.      On February 19, 2018, the Debtor purported to file an opposition to the Motion to Compel (the "Motion to Compel Opposition").  [Dkt. 227]

8.      On February 20, 2018, I filed my request to strike the Motion to Compel Opposition due to the fact that it was late-filed (the "Request to Strike").  [Dkt. 228]

9.      On March 8, 2018, the Court entered its Motion to Compel Order, which, among other things, granted the Request to Strike and the Motion to Compel.  [Dkt. 230, which is Exhibit "16" to the Motion to Dismiss]

10.     On May 3, 2019, I filed my Motion to Dismiss.  [Dkt. 244]  As can be seen from the proof of service on the Motion to Dismiss, it was served on (1) ECF participants, including the Debtor's counsel, via the ECF system, (2) the Debtor via U.S. Mail at the address he provided in

his bankruptcy petition under penalty of perjury, and (3) the Debtor via the email he has used to communicate on a regular basis with the Trustee and his counsel throughout the case.

11.     On May 5, 2019, the Court entered a docket order setting an evidentiary hearing (the "Evidentiary Hearing") on the Motion to Dismiss for May 21, 2019.  [Dkt. 245]

12.     On May 7, 2019, I filed my notice of the Evidentiary Hearing.  [Dkt. 247]  As can be seen from the proof of service on the notice of the Evidentiary Hearing, it was served on (1) ECF participants, including the Debtor's counsel, via the ECF system, (2) the Debtor via U.S. Mail at the address he provided in his bankruptcy petition under penalty of perjury, and (3) the Debtor via the email he has used to communicate on a regular basis with the Trustee and his counsel throughout the case.

13.     On May 20, 2019, the Court entered a docket order continuing the Evidentiary Hearing on the Motion to Dismiss to June 5, 2019.  [Dkt. 253]

14.     On May 20, 2019, I filed my notice of the continuance of the Evidentiary Hearing. [Dkt. 254]  As can be seen from the proof of service on the notice of the continuance of the Evidentiary Hearing, it was served on (1) ECF participants, including the Debtor's counsel, via the ECF system, (2) the Debtor via U.S. Mail at the address he provided in his bankruptcy petition under penalty of perjury, and (3) the Debtor via the email he has used to communicate on a regular basis with the Trustee and his counsel throughout the case.

15.     On May 29, 2019, the Debtor filed his late Opposition to the Motion to Dismiss.

16.     The Debtor is the only party that opposed or even responded to the Motion to Dismiss.  Thus, no creditors or other parties in interest oppose dismissal with a bar to refiling.

17.     The Debtor's assertion that he and his PC have paid the Trustee $2.222 million to fund the Plan is grossly misleading.   While the Debtor and his PC may have generated approximately $2.222 million in income, a small portion of those funds were available to fund required Plan distributions.  Instead, the bulk of the funds transferred by the Debtor and the PC were redeposited into the PC to fund its operations, including the Debtor's alleged "business" expenses for extravagant travel, dining, etc.  This was not supposed to happen under the Plan.

Instead, funds were supposed to flow to me to make plan distributions without me having to constantly re-capitalize the PC.

18.     As a result of the foregoing, I have only made approximately $708,685 in Plan distributions to creditors.  Of that amount, (1) $560,000 was paid to Mrs. Swenning, the Debtor's alleged former spouse and the only creditor who has been timely paid all distributions required by the Plan, on her spousal support claim, and (2) only $148,685 was paid to the other legitimate creditors of the estate.  [See Motion to Dismiss, at Exhibit "6."]

19.     The Debtor failed to make the New Value Payment in the amount of $9,500 that was due on January 18, 2019 pursuant to the Plan to purchase non-exempt equity in vehicles.

20.     The Debtor's failure to comply with the requirement under the Motion to Compel Order of turning over payments received by the PC within three (3) business days of receipt is ongoing to this day.  Attached hereto as Exhibit "A" is a true and correct copy of an email exchange with the Debtor regarding the most recent failure to timely turnover payments to me.

21.     As noted in the Dismissal Motion, as a result of the failures by the Debtor to adequately fund the Plan, the IRS and Desert Regional have called Plan defaults and demanded that I perform under the Plan.  In fact, as a result of the foregoing, as admitted by the Debtor, the IRS has started to levy on the Debtor's collections.  Attached hereto as Exhibit "A" is a true and correct copy of an email exchange with the Debtor where the Debtor admits that the IRS is levying on collections.

22.     Notwithstanding my numerous requests for documents and information regarding the New Tax Refund, neither the Debtor nor his accountants ever provided me with material portions of the documents and information he requested over two months ago.  More specifically, I was never provided with, inter alia, the following:

- Information regarding the year for which the $41,400 in New Tax Refund was made and the source of the New Tax Refund – *i.e.*, IRS, FTB, etc;

- A copy of the tax returns pursuant to which the New Tax Refund was made; and

- A copy of the checks pursuant to which the New Tax Refund was made.

23.     The Child Support Computation in the Temporary Support Agreement provides that the Debtor makes 94% of gross income and Mrs. Swenning makes 6% of gross income.  [*See* Motion to Dismiss, at Exhibit "4," which is a copy of the Temporary Support Agreement, at Child Support Computation Items 3 and 4 (aka Dkt 244 page 102 of 175.]  This is generally consistent with information I am familiar with and the monthly operating reports I filed in this case showing total gross monthly income of approximately $36,000 to the Debtor and Mrs. Swenning, who is employed by the PC and paid by me, with $33,000 or 92% in net income to the Debtor and $3,300 or 8% of net income to Mrs. Swenning.

24.     In addition to not providing me with documents and information regarding the New Tax Refund, the Debtor never paid any portion of the New Tax Refund to me, and the Debtor never responded to my inquiry as to recent large expenditures of cash that could have been used to fund the Plan.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 31st of May 2019, at Los Angeles, California.

*/s/ Todd A. Frealy*
TODD A. FREALY

# EXHIBIT "A"

## Todd M. Arnold

| | |
|---|---|
| **From:** | Todd M. Arnold |
| **Sent:** | Friday, May 31, 2019 12:37 PM |
| **To:** | Todd Swenning; Sam G. Bratton |
| **Cc:** | Martin J. Brill; Todd A. Frealy |
| **Subject:** | Swenning BK Case |

Dr. Swenning:

Below you stated that "Narayani is out of town. I have checks that I will fedex later today, but the forms are not filled out. What is the correct address to put on the fedex envelope?"

Where are these checks? We see that you deposited 8 checks totaling $2,270.15 into the PC account on 5/30. Are these the checks you were referring to? If so, under the plan and the Court's order on the motion to compel, you are required to send those checks (and all other payments made to you or the PC) to the Chapter 11 Trustee. Failure to do so will result in contempt.

Please advise as to why the checks were deposited into the PC account and not sent to the Chapter 11 Trustee as required. In the event that you do not respond we will assume that you are knowingly violating the plan and order on the motion to compel and will advise the Court of it at the hearing.

Thanks,
Todd

**From:** Todd Swenning <johnnysawbones@yahoo.com>
**Sent:** Thursday, May 23, 2019 12:23 PM
**To:** Todd A. Frealy <TAF@lnbyb.com>; Sam G. Bratton <sbratton@dsda.com>
**Subject:**

Todd,

I am not sure if you were aware, but I found out this week that the IRS has been taking my medicare deposits in the form of a levy. This explains why my electronic deposits have dwindled.

I have malpractice, accounting, and billing/collections to pay for yet this month. Total being roughly 7k. Could you transfer 5500 to the operating account?

Also, Narayani is out of town. I have checks that I will fedex later today, but the forms are not filled out. What is the correct address to put on the fedex envelope?

TS

## Todd Swenning, MD, FAAOS

Medical Director
Institute of Clinical Orthopedics and Neurosciences (ICON)
Director of Orthopedic Trauma
Desert Regional Medical Center

Palm Springs, CA
Communications Cabinet-American Academy of Orthopedic Surgeons
Health Policy Committee-Orthopedic Trauma Association

## CERTIFICATE OF SERVICE

I hereby certify that on  May 31, 2019                              (Date), I electronically transmitted the foregoing document to
the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF
registrants (names only are sufficient):

                             on al the persons who are on the Electronic Mail Notice List to Receive NEF
transmission at their respective email addresses

I hereby certify that on  May 31, 2019                        (Date), I served the same document by

☑ U.S. Postal Service        ☐ In Person Delivery

☐ Courier Service        ☑ E-Mail

on the following, who are not registered participants of the ECF system:

Name(s) and Address(es):  Todd A Swenning 140 W Via Lola, #113 Palm Springs, CA 92262;  johnnysawbones@yahoo.com

                                     /s/ Todd M. Arnold
                                    Signature
                                    TODD M. ARNOLD
                                    Cal. Bar No. 221868
                                    (Pro Hac Vice Application Approved)
                                    10250 Constellation Boulevard, Suite 1700
                                    Los Angeles, California 90067
                                    Telephone:  (310) 229-1234
                                    Facsimile:  (310) 229-1244
                                    Email: tma@lnbyb.com
                                    Counsel for Chapter 11 Trustee,
                                    Todd A. Frealy