IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE:

TODD A. SWENNING                                     Case No. 15-11408

          Debtor                                     Chapter 11

### DEBTOR'S RESPONSE AND OBJECTION TO TRUSTEE'S REQUEST FOR A PERMANENT BAR TO DISCHARGE PURSUANT TO 11 U.S.C. § 349(a)

In the present case, the Trustee has requested not only that the Debtor's bankruptcy case be dismissed, but that the Debtor be barred from re-filing a subsequent bankruptcy case for 180 days <u>and</u> that he be forever barred from discharging any debt which would have been dischargeable in this bankruptcy case. In other words, a death penalty (Doc. Nos. 244 and 260) to which the Debtor hereby objects. The Trustee seeks professional and financial death for the Debtor, notwithstanding that it would clearly be in the best interests of the creditors that the Debtor continue to work to generate income to repay the creditors. A moratorium on refiling and a permanent bar to discharge is not only permanently devastating to the Debtor, it is contrary to the creditors' interests. It is for these reasons that Courts have uniformly held that the drastic remedies requested by the Trustee here should be reserved for the most extreme cases, which this is not. *Hall v. Vance*, 887 F.2d 1041 (10th Cir. 1989); *Matter of Ladd*, 82 B.R. 476,477, Bankr. N.D. Ind., 1988). "Depriving a debtor of access to the courts for 180 days is in itself a harsh remedy, which may be questionable." *Frieouf v. United States of America, et al.*, 938 F.2d 1099 at 1103-1104 (10th Cir. 1991). There is no evidence here of false testimony, concealment, manipulation of the system or other systemic wrongdoing intended to harm creditors such as to warrant the death penalty.

<u>The case was filed in good faith</u>. No party contends that the Debtor's case was not filed in good faith. Prior to filing, the Debtor was a high income trauma surgeon under contract at

Saint Francis Hospital in Tulsa, Oklahoma. The Debtor's contract with Saint Francis was not renewed (through no fault or deficiency of the Debtor) and the Debtor was unemployed. At the same time, the creditors' collection actions were becoming unmanageable for the Debtor. The Debtor had procured a contract to provide professional medical services in his specialty at Desert Regional Medical Center in Palm Springs, California ("Desert Regional"), which would provide substantial income, but not immediately. The Debtor filed the bankruptcy case in order to stay collection activities while his income from Desert Regional was secured, which occurred.

The Debtor proposed a Plan. In the Debtor-in-Possession phase of this Chapter 11 case, the Debtor proposed a Plan which would have paid creditors a slightly higher dividend than that proposed by the confirmed Trustee's Plan. The Debtor's Plan was not confirmed, but he filed a Plan, and amendments thereto, responding to creditors' input, in good faith to attempt to pay the creditors.

The Debtor has worked ceaselessly to provide income to fund the Trustee's Plan. The testimony is undisputed that the Debtor is working about as hard as he can to generate revenue for the Trustee's Plan. He has paid over $2,220,000.00 to the Trustee in the 31 months since confirmation of the Trustee's Plan. His payments to the Trustee were generally timely with some earlier interruption while workable procedures regarding forwarding collections and making payroll were established, and recently when this Trustee ceased funding the Debtor's practice. The evidence is also undisputed that if the case is not dismissed, the Debtor will continue to generate substantial income to fund the Trustee's Plan.

Debtor's Expenditures. The Trustee has identified certain of the Debtor's expenditures as "improper payments," when in fact many of the itemized expenditures (Trustee's Exhibit 9) are classified as improper only because the Trustee cannot discern the purpose. Most of the

expenditures were discretionary to the Debtor, deemed by him to be necessary or appropriate to perform his medical practice, to serve on the several distinguished professional boards through which he enhances his professional standing, or to serve the medical community and his hospital. Some of the scheduled expenses were personal living expenses. Respecting expenses which the Debtor could have avoided, the Debtor made such expenditures in good faith for purposes necessary or appropriate to continue to pay his bills and function in the community, or for ordinary living. Many of such expenses were not budgeted but they were made in good faith. Overall, while the Debtor's spending could have been reigned in, his spending pattern falls well short of the standards for imposition of the most extreme sanctions the Bankruptcy Code contains, being forever barred from discharging his debts and from getting a fresh start and attempting to repay his creditors.

The New Tax Refund. The New Tax Refund (2016) was not a budgeted item to be paid to the Trustee in the Trustee's Plan. The 2015 Tax Return was a budgeted item and it was paid to the Trustee. The New Tax Refund was paid by the IRS as a joint pay check to Debtor and Ms. Swenning. On advice of his accountant, Ms. Swenning's half was deposited into her account. When the New Tax Refund was received, Debtor utilized his half for personal expenses. While the handling of the New Tax Refund might be subject to criticism, it was done in good faith and was not egregious such as to warrant destruction of the Debtor's life and livelihood and eliminating any possibility that the creditors will be paid.

The $9,500.00 New Value Payment. The Trustee's Plan called for the Debtor to make a $9,500.00 "New Value Payment" in January, 2019. The payment is delinquent, not because the Debtor willfully chose to ignore it, but he simply has not had the money. As of June 5, 2019, the Debtor had approximately $65.00 in his personal account and around $1,300.00 in the PC

account. Under the Trustee's Plan, it was anticipated that the Debtor's overall revenues would exceed expenses and that a surplus would develop from which the $9,500.00 could be paid. The Debtor's revenues fell short of the Trustee's projections and he has not been able to make the $9,500.00 payment. He does not dispute that it is due and he intends to pay it, but the payment will have to come out of revenues from his practice. The Medicaid and Medi-Cal payments backlog is trending up and the Debtor anticipates he will be able to make the New Value Payment if the Plan continues.

<u>Totality of the Circumstances</u>. In considering bad faith as a cause for dismissal of a petition with prejudice, the Court should consider the following factors: (1) whether the Debtor misrepresented facts or unfairly manipulated the Bankruptcy Code; (2) serial filing; (3) whether the purpose of the bankruptcy was solely to defeat state court litigation; and (4) whether egregious behavior is present. *In re Leavitt*, 171 Fed.3d 1219 (9th Cir. 1999) (Chapter 13 case).

Here, there is no evidence of misrepresentation or manipulation of the Bankruptcy Code nor of a serial filing, nor of an improper purpose in filing the Chapter 11 case. As to the fourth prong, although the Debtor's financial management may not be exemplary, and there have been failures to meet payment obligations, such transgressions are relatively minor compared to the Debtor's single-minded determination to generate as much income for the Plan as possible in contributing over $2,222,000.00 to fund the Trustee's Plan. $708,605.00 has been distributed to creditors (Trustee's Reply, filed May 31, 2019, Doc No. 260, pp. 8-9) and the Trustee holds over $130,000.00 in his accounts, all contributed by the Debtor. Overall, the Plan deficiency to the creditors is approximately $175,000.00 which is a material sum, but a small sum compared to the millions of dollars the Debtor has contributed to the Trustee's Plan and would hereinafter contribute. Payments to creditors are likely to increase due to the resumption of Medicaid and

Medi-Cal payments, and the payment shortfall to the creditors could be expected to decline in the ordinary administration of the case going forward.  In sum, a dismissal would not be in the best interests of the creditors and under the totality of the circumstances in this case, a bar to refiling or to a subsequent discharge is not warranted.

WHEREFORE, the Debtor requests that the Trustee's request for a bar to refiling and a bar to discharge be denied.

DOERNER, SAUNDERS,
  DANIEL & ANDERSON, L.L.P.

By: */s/ Sam G. Bratton II*
Sam G. Bratton II, OBA No. 1086
Williams Center Tower II
Two West Second St., Suite 700
Tulsa, Oklahoma 74103
Telephone: (918) 582-1211
Facsimile: (918) 591-5360
sbratton@dsda.com

*Counsel for Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of June, 2019, a true and correct copy of the above and foregoing instrument was served electronically on all participants in the CM/ECF system in the above case.

*/s/ Sam G. Bratton II*
Sam G. Bratton II

5025204.1